NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In Re the Matter of:

LORETTA SHORT, *Petitioner/Appellant*,

*v.*

FELICIA RIVERA, *Respondent/Appellee*.

No. 1 CA-CV 26-0159 FC

FILED 08-10-2026

Appeal from the Superior Court in Maricopa County
No. FC2024-006250
The Honorable Amy Michelle Kalman, Judge

**AFFIRMED**

COUNSEL

Loretta Short, Winslow
*Petitioner/Appellant*

Law Offices of David B. Higgins, PLLC, Phoenix
By David B. Higgins
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Angela K. Paton and Judge Michael J. Brown joined.

---

**B A I L E Y**, Judge:

¶1          Loretta Short ("Grandmother") appeals the superior court's denial of her request for third-party visitation with her daughter Felicia Rivera's ("Mother['s]") child, and its award of attorneys' fees. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother has three biological children: Bella, Amy, and Mia.[1] Each child has a different father, with Mia's being Matthew Oso ("Father"). Amy has special needs and must be fed via a gastrostomy tube.

¶3          Mother lived with Grandmother when Bella was born, and again shortly after Amy was born. Mother then entered an abusive relationship that resulted in Grandmother receiving temporary guardianship of Bella and Amy in August 2015. Grandmother became the children's primary caretaker, but Mother remained involved in their lives and eventually reassumed physical custody. The guardianship was then formally terminated in September 2017.

¶4          Soon after the guardianship ended, Mother and the children moved in with Father. Mia was born to Mother and Father the next year.

¶5          Grandmother remained involved in the children's lives. She often helped care for them, and she had frequent phone contact with Amy. Grandmother also gave Mother financial assistance. At some point, however, Mother began wanting distance from Grandmother. Mother testified that Grandmother would not let Mother "be the mom." Additionally, Grandmother frequently blew Amy's health complaints out of proportion and would not accept her doctor's conclusions. Father confirmed that Grandmother had a pattern of overpowering Mother and trying to gain control over Amy.

---

[1] We use pseudonyms to protect the children's identities.

**¶6**         In late 2024, Grandmother called Amy's doctor to get the doctor's opinion about Mother and Father allowing other children in their home to help with Amy's feeding.  The doctor would not talk to Grandmother and referred her to a social worker.  After talking to the social worker, Grandmother reported Mother and Father to law enforcement and the Department of Child Safety ("DCS").  Grandmother reported that children were responsible for managing Amy's feeding and other care and that she suspected Amy was sexually abused because she engaged in masturbation, screamed in her sleep when Grandmother tried to move her, and missed school due to headaches and stomachaches.  Grandmother also reported that she suspected Mia was sexually abused because she rocked back and forth in her car seat.

**¶7**         After the neglect and abuse reports, Mother and Father cut off all family contact with Grandmother.  They cooperated in DCS's investigation and DCS deemed Grandmother's claims unsubstantiated.

**¶8**         Grandmother petitioned the superior court for third-party visitation, initiating a separate case for each child.  In Mia's case, both Mother and Father responded and asked the court to deny visitation.  Both parents emphasized the result of DCS's investigation, with Father later testifying that he viewed Grandmother's conduct as "harassment."  Mother also testified that she opposed visitation because Grandmother was constantly interfering with her parenting and with Amy's health issues.  Mother added that given Grandmother's refusal to accept DCS's conclusions and her history of poisoning relationships based on false accusations, Mother worried that Grandmother would encourage the children to believe harmful falsehoods about Father and other relatives.

**¶9**         The court held a joint trial on the three visitation petitions but did not consolidate the cases.  After considering the evidence, the court entered separate rulings in each case denying Grandmother visitation to each child.  The court also awarded Mother attorneys' fees, recording in each case a single appealable judgment ordering Grandmother to pay approximately $7,000 in fees and costs.  Grandmother unsuccessfully sought post-judgment relief and filed a timely notice of appeal in Mia's case.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and 12-2101(A)(1).

**DISCUSSION**

¶10          We note that because Grandmother appealed in Mia's case only, we may not consider Grandmother's arguments regarding the rulings in Bella or Amy's cases.

      I.          The superior court afforded Grandmother due process.

¶11          Grandmother first contends that the joint trial without consolidation denied her due process. We review constitutional challenges de novo. *In re Guardianship of A.K.*, 258 Ariz. 336, 342, ¶ 16 (App. 2024). We hold that Grandmother was afforded due process.

¶12          "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 343, ¶ 18 (citation and internal quotation marks omitted). Grandmother was given that opportunity here. Grandmother initiated separate visitation cases for children with a common mother but different fathers. In those circumstances, the court had discretion to hold a joint trial but not consolidate the cases. *See* Ariz. R. Fam. Law P. 5(a)(1) ("If pending cases involve a common child, common parties, or a common question of law or fact, the court may order a joint hearing or trial of any or all the matters at issue, or it may consolidate the cases."). Grandmother was given notice of the trial and fully participated.

¶13          Grandmother complains that the joint trial caused "inconsistent and incomplete dockets across three case numbers." She asserts that Mother did not file her fee application[2] in each of the cases. The record before us, however, reveals that the fee application was timely filed in Mia's case. The record also reveals that the court received Grandmother's objection to the application before ruling, and there is no indication that, as Grandmother asserts, the objection was sealed (which would not have impaired her right to be heard in any event). Grandmother had a full and fair opportunity to participate in the fee-award litigation, and the court properly entered a single judgment to avoid triplicate recovery in the jointly tried cases.

¶14          Grandmother was not denied due process at any stage of the proceedings. We also reject her argument that she was entitled to findings

---

[2] Father did not apply for or receive fees because he was not represented by counsel.

on the denial of her Arizona Rule of Family Law Procedure 85 motion, because that rule does not require findings. *See* Ariz. R. Fam. Law P. 85.

II.      The superior court properly denied Grandmother's visitation request.

**¶15**      Grandmother next challenges the court's denial of visitation. We review the ruling for an abuse of discretion, viewing the evidence in the light most favorable to affirming. *Flanigan v. Kittelson*, 260 Ariz. 498, 503, ¶ 10 (App. 2025). We hold that the court acted within its discretion.

**¶16**      Where, as here, a child is born out of wedlock and her parents do not marry each other, the court may award visitation rights to a third party over the parents' objection upon finding such visitation to be in the child's best interests. A.R.S. § 25-409(C)(2). In determining the child's best interests, the court must consider all relevant factors, including the historical relationship between the child and the third party, the third party's motivation in seeking visitation, the parents' motivation in objecting to visitation, and the quantity of visitation requested and the potential impact it would have on the child's customary activities. A.R.S. § 25-409(E). But the court also must give "special weight to the legal parents' opinion of what serves their child's best interests." *Id.* In other words, when fit parents opine that visitation would not serve the child's best interests, the party seeking visitation must present clear and convincing evidence to the contrary. *Flanigan*, 260 Ariz. at 504-05, ¶¶ 16, 20.

**¶17**      Here, Mother and Father were never adjudicated to be unfit parents, so the superior court correctly gave special weight to their opinion that Grandmother should have no visitation with Mia.[3] *See In re Marriage of Friedman & Roels*, 244 Ariz. 111, 119, ¶ 33 (2018) (holding that parents are presumptively fit unless adjudicated unfit). Contrary to Grandmother's suggestion, there is no indication that the court misapplied the standard by "simply defer[ring]" to Mother and Father's opinion. To the contrary, the court gave special weight to the parents' opinion but also expressly considered the other relevant factors set forth in A.R.S. § 25-409(E).

**¶18**      Grandmother argues that the superior court prevented her from presenting evidence about the historical-relationship and visitation-motivation factors. *See* A.R.S. § 25-409(E)(1)-(2). To start, the historical-

---

[3] Grandmother argues that Father's opinion was not entitled to special weight as to Amy because he is not her legal parent. We need not address this argument because Amy's case is not before us.

relationship evidence related to the guardianship period did not pertain to Mia. Further, Grandmother was allowed to present copious evidence regarding her post-guardianship involvement in all three children's lives, and Mother agreed that Grandmother had played a significant role. Though Grandmother complains that the court "repeatedly interrupted and restricted her testimony," our review reveals that the court properly managed the presentation of evidence to aid the efficacy of the proceedings. *See* Ariz. R. Evid. 611(a)(1)-(2) (authorizing the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth" and "avoid wasting time"); *see also Findlay v. Lewis*, 172 Ariz. 343, 346 (1992) ("A trial court has broad discretion over the management of its docket."). Further, consistent with the evidence, the court found in Grandmother's favor on the historical-relationship factor, concluding that "Grandmother has a close historical relationship with [Amy], and a relationship with [Mia] and [Bella]," and that she "loves all three children."

**¶19** Grandmother was also allowed to offer evidence regarding the safety concerns motivating her visitation request. She testified about the reasons for her concerns and her report to DCS, and the court also considered DCS documents. Grandmother argues that the DCS documents were incomplete and unreliable. But it was Grandmother who offered the documents. Moreover, Grandmother was allowed to testify as to why she remained concerned about the children's well-being despite DCS's conclusions. It was for the superior court to weigh the evidence. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶20** Based on the evidence, the court reasonably found that although Grandmother had a historical relationship with Mia, her motives for seeking visitation with Mia were mixed given her focus on Amy. Moreover, the court properly gave special weight to Mother and Father's opinion that Grandmother should have no access to Mia as a "reasonable request to draw some boundaries and protect their roles as parents, consistent with [Mia]'s best interests." Grandmother contends that the court focused on irrelevant considerations because it observed that the litigation might have been unnecessary had Grandmother apologized for her actions. But this statement bore upon Mother and Father's motivation for opposing visitation based on a continuing risk that Grandmother would influence Mia to believe unproven accusations, a relevant consideration under A.R.S. § 25-409(E)(3).

III.    The superior court properly awarded attorneys' fees.

**¶21** Grandmother raises several challenges to the attorneys' fees award. We review the fee award for an abuse of discretion, but we review questions of statutory interpretation de novo. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004). We hold that the court committed no error.

**¶22** First, we reject Grandmother's argument that the court had to make findings to support the fee award. The court acted under A.R.S. § 25-324(A), which requires findings only "[o]n request of a party or another court of competent jurisdiction." No such request was made. Next, we reject Grandmother's arguments that Mother's fee application was deficient. Contrary to Grandmother's contention, the application was signed. Further, the record reveals no support for Grandmother's assertion that the application was premised on duplicative, inflated, or mathematically incorrect billing records.

## CONCLUSION

**¶23** We affirm the superior court's orders denying third-party visitation and awarding attorneys' fees.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR